# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10863

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JAIME SHAKUR GARCIA,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, PRADO, and GRAVES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Jaime Shakur Garcia pleaded guilty to one count of Hobbs Act robbery and one count of possessing and discharging a firearm in furtherance of a crime of violence. In calculating Garcia's sentence for the Hobbs Act robbery count, the district court applied a sentencing enhancement based on the assessment that Garcia and his codefendants had physically restrained the victims. Garcia contends that this sentencing enhancement was improper. Garcia also claims that his firearm conviction is invalid because the statute of conviction is unconstitutionally vague and therefore violates his due process rights. We AFFIRM Garcia's firearm conviction, VACATE his sentence for the Hobbs Act robbery count, and REMAND for resentencing.

No. 16-10863

## I. BACKGROUND

In October 2015, Garcia and two other defendants entered a gun store in Lubbock, Texas, wearing ski masks and carrying firearms. One of the defendants held a handgun to a store employee's head and demanded that the employee get down on the floor. Due to physical limitations, however, the employee was unable to comply. Meanwhile, another defendant stood near the door holding a firearm, and a third defendant smashed a glass display case that contained firearms. One of the store's employees was in a back room when he heard glass break. This second employee then rushed to the front of the store, took cover behind a display case, and loaded a pistol. Shortly thereafter, the second employee heard two rounds of shots fired and felt a sharp pain in his ankle. After realizing he had been shot, the employee stood and fired at the defendants. A brief exchange of gunfire ensued. The defendants then fled the scene with nine stolen firearms, while the employee continued to fire at them.

Garcia later pleaded guilty to one count of Hobbs Act robbery under 18 U.S.C. § 1951(a) and one count of possessing and discharging a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). Garcia did not waive his right to appeal. A presentence investigation report ("PSR") calculated Garcia's sentencing range under the 2015 edition of the U.S. Sentencing Guidelines Commission Manual (the "Guidelines"). The PSR recommended a range of 51 to 63 months for the Hobbs Act robbery count, which included a two-level enhancement for physical restraint of a victim under U.S.S.G. § 2B3.1(b)(4)(B).[1] The PSR also recommended imposing the statutory minimum sentence of 120 months for the firearm count.

---

[1] Without this enhancement, Garcia's Guidelines range would have been 41 to 51 months. *See* U.S.S.G. ch. 5, pt. A.

No. 16-10863

The government—joined by the defense—objected to the physical restraint enhancement, contending that binding Fifth Circuit precedent "likely precludes application of the physical restraint enhancement under this set of facts." The government's objection relied on *United States v. Hickman*, 151 F.3d 446, 460–61 (5th Cir. 1998), *unanimously approved of in relevant part on reh'g en banc*, 179 F.3d 230 (5th Cir. 1999), a case in which we held that the district court erred in imposing a physical restraint enhancement. The probation office then prepared an addendum to the PSR, which took the position that the physical restraint enhancement was properly applied. The addendum noted that a few facts distinguished Garcia's case from *Hickman*: a defendant in the instant case held a gun to the head of a victim and ordered the victim to get on the ground; one of the defendants stood near the exit while holding a firearm; and gunfire was exchanged. Garcia and the government maintained their objections to the enhancement during the sentencing hearing.

The district court adopted the PSR addendum's reasoning and overruled the objections to the sentencing enhancement. The district court then imposed a sentence of 51 months' imprisonment for the Hobbs Act robbery count and 120 months' imprisonment for the firearm count, to be served consecutively. This appeal followed. On appeal, Garcia claims that (A) his conviction under 18 U.S.C. § 924(c) is invalid and (B) the physical restraint enhancement was improperly applied.

## II. DISCUSSION

### A.    Conviction for Possessing a Firearm

Garcia argues that we should reverse his conviction under 18 U.S.C. § 924(c)(1)(A) for possessing, brandishing, or discharging a firearm "during and in relation to any crime of violence." The term "crime of violence" is defined as any felony that:

No. 16-10863

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Garcia contends that Hobbs Act robbery under 18 U.S.C. § 1951(a) does not fall within the definition of a crime of violence.

Garcia first argues that Hobbs Act robbery does not involve "the use, attempted use, or threatened use of physical force" as required by § 924(c)(3)(A). However, even if that argument is correct, Hobbs Act robbery could still constitute a felony that "involves a substantial risk that physical force . . . may be used" under § 924(c)(3)(B). Garcia's only argument with respect to this latter provision is that § 924(c)(3)(B) "is unconstitutionally vague, depriving Mr. Garcia of fair notice as to the content [of] his offense under the due process clause."

In *Johnson v. United States*, the Supreme Court held that a somewhat similar provision, the residual clause of 18 U.S.C. § 924(e), was unconstitutionally vague.[2] 135 S. Ct. 2551, 2555–60 (2015). However, our Court subsequently held that 18 U.S.C. § 16(b), which contains wording almost identical to that of § 924(c)(3)(B), is not unconstitutionally vague. *United States v. Gonzalez-Longoria*, 831 F.3d 670, 674–77 (5th Cir. 2016) (en banc), *petition for cert. filed* (U.S. Sept. 29, 2016) (No. 16-6259). To preserve this issue for further review, Garcia argues that *Gonzalez-Longoria* was wrongly decided. But because Garcia concedes that *Gonzalez-Longoria* is controlling, we affirm his conviction under § 924(c).[3]

---

[2] The residual clause of § 924(e)(2)(B) defined "violent felony" to mean a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

[3] Some members of this Court have suggested that a defendant's "concession should be understood as not establishing a legal precedent beyond the preclusive effect, as law of the

## B.    Physical Restraint Enhancement

Garcia also argues that the district court erred in imposing a sentencing enhancement for physical restraint. Though the government objected to the enhancement below, the government now contends that "this Court's decision in *Hickman* and decisions from other circuits support application of the enhancement in these circumstances." "Where, as here, the defendant objects to a sentencing enhancement in the district court, this court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error." *United States v. Johnson*, 619 F.3d 469, 472 (5th Cir. 2010).

Section 2B3.1(b)(4)(B) of the Guidelines imposes a two-level enhancement "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." The Guidelines commentary defines "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. §§ 1B1.1 cmt. n.1(K), 2B3.1 cmt. n.1. "By the use of the words 'such as,' it is apparent that 'being tied, bound or locked up' are listed by way of example rather than limitation." *Hickman*, 151 F.3d at 461 (quoting *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989)); *accord United States v. Wallace*, 461 F.3d 15, 33 (1st Cir. 2006); *United States v. Thompson*, 109 F.3d 639, 641 (9th Cir. 1997). Therefore, "it is possible for a district court to conclude that a defendant physically restrained his victims without evidence that he actually tied, bound, or locked them up." *Hickman*, 151 F.3d at 461.

---

case or res judicata, on the parties to that proceeding in the case at hand or subsequent litigation." *United States v. Castillo-Rivera*, 853 F.3d 218, 235 (5th Cir. 2017) (Smith, J., dissenting). Because a "party can concede a legal issue for divers reasons," "he and only he should suffer the consequences—or reap the benefits—of a decision to concede a point of law." *Id.* at 234–35.

No. 16-10863

As the Second Circuit has pointed out, however, each of the examples in the Guidelines commentary "involves a restraint of movement by the use of some artifact by which the victim is 'tied' or 'bound' . . . or by the use of a space where the victim is 'locked up.'" *United States v. Anglin*, 169 F.3d 154, 164 (2d Cir. 1999). The "examples, while not imposing inflexible limitations upon the phrase 'physical restraint,' nonetheless are intended as meaningful signposts on the way to understanding the Sentencing Commission's enhancement purpose." *Id.* Consistent with that approach, this Court and others have held that physical restraint enhancements are appropriate in cases where defendants force their victims to move into confined spaces at gunpoint and instruct the victims not to leave. *See United States v. Stevens*, 580 F.3d 718, 721 (8th Cir. 2009); *United States v. Frank*, 223 F. App'x 412, 413 (5th Cir. 2007) (per curiam); *United States v. Doubet*, 969 F.2d 341, 347 (7th Cir. 1992), *abrogated on other grounds by United States v. Dunnigan*, 507 U.S. 87 (1993).

In *Stevens*, for example, the Eighth Circuit upheld a physical restraint enhancement because the defendant "moved [bank] employees to two distinct locations at gun point and closed them in a vault under circumstances clearly implying they should remain there or risk physical harm." 580 F.3d at 721. The court explained that "moving the employees . . . surely hindered the employees' ability to alert authorities and prevent the defendants' escape to a greater degree than merely brandishing a weapon and allowing the victims to stay where they were." *Id.* By contrast, in the instant case, none of the defendants' actions were even remotely similar to tying, binding, or locking up the victims. The defendants entered the store holding firearms, one pointed a firearm at a store employee and instructed the employee to get on the ground, and another stood near the store's exit. Throughout these events, the defendants allowed the employees to remain where they were and never forced them to move to a confined space.

6

No. 16-10863

Some courts have held that blocking an exit while brandishing a gun and instructing victims not to move can constitute physical restraint. *United States v. Miera*, 539 F.3d 1232, 1233–36 (10th Cir. 2008); *Wallace*, 461 F.3d at 34–35. In *Miera*, a bank robber "remained near the bank's door and pointed a gun around the room, telling . . . people not to move in a loud, strong voice," while his codefendant approached the teller station and demanded money. 539 F.3d at 1233 (internal quotation marks omitted). The Tenth Circuit noted that pointing the gun around the room likely "had the effect of physically restraining everyone in [the defendant's] presence." *Id.* at 1235. Moreover, by "standing in front of the bank's door," the defendant "in all likelihood blocked the bank's customer exit, and thereby kept the bank's occupants from even considering an escape." *Id.* Based on these facts, the Tenth Circuit held that this conduct "appropriately resulted in a physical restraint enhancement." *Id.* at 1236.

However, the *Miera* court appears to have applied a broader standard than the one this Court has previously endorsed. In *Hickman*, we held that a defendant did not physically restrain a store employee when he pointed a firearm at the employee during a robbery. 151 F.3d at 461. The government had argued that "this action carried an implicit threat to obey [the defendant's] command or be shot and was enough to support a finding of physical restraint." *Id.* Yet we concluded that "merely brandishing a weapon at a victim cannot support an enhancement under this section of the Guidelines, because, '[w]ere it otherwise, enhancement would be warranted every time an armed robber entered a bank, for a threat not to move is implicit in the very nature of armed robbery.'" *Id.* (alteration in original) (quoting *Doubet*, 969 F.2d at 346). Although the defendant's actions "permitted no alternative but compliance, he did nothing to restrain his victim that an armed robber would not normally do." *Id.* Likewise, as Garcia notes, the defendants' actions in the present case—

7

standing near a door, holding a firearm, and instructing a victim to get on the ground—simply "make explicit what is implicit in all armed robberies: that the victims should not leave the premises." Such conduct does not differentiate this case in any meaningful way from a typical armed robbery.

We also note that "'restraint' is a condition capable of being brought about by a number of forces—physical, mental, moral"—but "[i]n the phrase in question, 'physical' is an adjective which modifies (and hence limits) the noun 'restraint.'" *Anglin*, 169 F.3d at 164. In *Anglin*, the Second Circuit held that "displaying a gun and telling people to get down and not move, without more, is insufficient to trigger the 'physical restraint' enhancement." *Id.* Though the court had no doubt that the "robber's conduct caused the . . . tellers to feel restraint, they were not subjected to *physical* restraint." *Id.* at 164–65 (emphasis added). Similarly, in the case at hand, we have little doubt that at least one of the employees felt restrained when the barrel of a gun touched the back of his neck. Still, this employee and his coworkers were not subjected to the type of *physical* restraint that victims experience when they are tied, bound, or locked up.

Finally, the PSR addendum indicated that "gunfire was exchanged, creating an enhanced risk and substantially more limitation for escape." However, our sister circuits have clearly stated that "the physical restraint of the victims is not the equivalent of the possession, use, or *discharge* of a firearm." *United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir. 1998) (emphasis added); *accord United States v. Pearson*, 211 F.3d 524, 527 (10th Cir. 2000). "In other words, those acts alone do not automatically create a situation where physical restraint of an individual occurs. Instead, something more must be done with the gun to physically restrain them." *Pearson*, 211 F.3d at 526–27. In the instant case, we conclude that the defendants did not do anything with their firearms that goes beyond what would normally occur

No. 16-10863

during an armed robbery. Thus, we hold that the district court erred in imposing the physical restraint enhancement.

## III. CONCLUSION

For the reasons discussed above, we AFFIRM Garcia's conviction under 18 U.S.C. § 924(c), we VACATE his sentence for the Hobbs Act robbery count, and we REMAND the case for resentencing consistent with this opinion.